360 So.2d 617 (1978)
Mrs. Gwendolyn Barnett, w/o and Dale BARNETT
v.
Ronald J. VANNEY and American Guaranty and Liability Insurance Company and Vincent Lauro, Cooper and Weir Company, Inc. and United States Fidelity and Guaranty Ins. Co.
No. 8353.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 1978.
Rehearing Denied July 26, 1978.
*618 Gerald J. Leydecker, New Orleans, counsel for Mrs. Gwendolyn Barnett, w/o and Dale Barnett, plaintiffs-appellants.
Wiedmann & Fransen, A. Remy Fransen, Jr., New Orleans, counsel for Vincent Lauro, Cooper and Weir Co., Inc. and United States Fidelity and Guaranty Ins. Co., defendants, appellees-appellants.
Wood Brown, III, New Orleans, counsel for Valsin Vanney, Ronald Vanney and American Guaranty & Liability Ins. Co., defendants-appellees; Montgomery, Barnett, Brown & Read, New Orleans, of counsel.
Before STOULIG, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
Mrs. Gwendolyn Barnett and her husband Dale Barnett sue for her personal injuries and damages arising out of a three vehicle collision. From a jury verdict and judgment in favor of plaintiffs for $35,000, the plaintiffs have appealed the award as inadequate; defendants Vincent Lauro, Cooper & Weir Company, Inc. and United States Fidelity and Guaranty Insurance Company have appealed contesting liability, and defendants Ronald J. Vanney and American Guaranty and Liability Insurance Company have answered the appeals.
The facts are as follows. Mrs. Barnett was driving a community owned automobile on Interstate 10 towards New Orleans. As *619 she proceeded over the overpass across the Industrial Canal, she was travelling in the center lane of the three traffic lanes. When she reached a location about 200 yards from the bottom of the overpass, she slowed her vehicle down because of traffic congestion and stopped vehicles ahead, resulting from a prior collision at the foot of the overpass. While her vehicle was in the process of stopping, it was struck in the rear by the front of the following vehicle in the center lane, driven by Ronald J. Vanney. The impact propelled the Barnett vehicle forward and on a slight angle. Some seconds later, a truck driven by defendant Lauro in the scope of his employment with Cooper & Weir Company, Inc., struck the right rear of the Barnett vehicle with its left rear tire. As a result of these two collisions Mrs. Barnett experienced pains in her neck, shoulder, low back and chest, the basis for her present suit.
The jury found negligence on the part of Vanney and Lauro, no negligence on the part of Mrs. Barnett, and the defendants were cast in solido. We affirm these findings of negligence.
The negligence of Vanney is readily apparent and is no longer seriously contested. He was travelling in the same lane as the Barnett vehicle, and was under an obligation to operate his vehicle in such a manner as to be able to stop with safety. His defense is largely based on the fact that the weather was overcast and misty and that the road was wet, causing him to skid into the vehicle ahead. We point out that plaintiff did not come to any sudden or emergency stop for the traffic in front of her, and there is no reasonable basis to conclude that Vanney could not also stop.
The evidence also preponderates to prove the negligence of Lauro. He too was driving in the center lane, operating a stake-body truck, and between him and Vanney were three automobiles, all in the center lane. As each of those vehicles approached the rear of Vanney's car, it turned into the left lane and proceeded safely onward. Lauro pulled into the right hand lane in order to pass the stopped vehicles. He safely passed Vanney on the right, but his truck began skidding sideways due to his application of the brakes and his left rear struck the right rear of the Barnett vehicle. Issue is made that the Barnett car was still spinning as a result of the collision with Vanney and that its right rear came into the right lane in which Lauro was travelling, causing the collision. Mrs. Barnett testifies that she was stopped in the center lane and attempting to get out of her vehicle at the time of the collision. The issue thus becomes one of credibility of the witnesses, and it is apparent that the jury adopted Mrs. Barnett's testimony as being truthful. We too find that the evidence preponderates in support of Mrs. Barnett's testimony, and we agree with the jury's finding, holding both defendants in solido.
The most troublesome aspect of this litigation arises in the evidentiary rulings and the charge of the trial judge. The trial judge permitted evidence of the financial condition of Vanney, one of the defendant drivers, and, because he was a minor, also Vanney's father. The insurance coverage of the Vanneys' carried by American Guaranty and Liability Insurance Company was $25,000, and these policy limits were permitted in evidence as well. $100,000 policy coverage of the other defendants was not permitted in evidence. The trial judge charged the jury as follows:
"You may take into consideration that the insurance policy of the defendants Valsin and Ronnie Vanney contains a limit restriction of the insurance company's liability for $25,000 plus interest in this case. It is within your province to decide that the plaintiffs are entitled to more than that, however, and in the event that you decide if the Vanneys are responsible to plaintiffs anything over the policy limits must be paid by them and their ability to pay is a factor which must be considered."
Two contentions have arisen as a result. Plaintiffs contend that the result of that evidence and the charge thereon is an inadequate verdict, which barely covers the special damages of medical expense, loss of *620 wages, etc. Defendant Lauro contends that the situation resulted in his being cast in liability, to his prejudice, in order to provide a responsible defendant who could pay the judgment.
We feel constrained to point out that there will invariably be problems arising under existing jurisprudential rules when multiple defendants are sued, and some are impecunious and some are not. Innumerable cases have held that the inability of a defendant to pay a judgment is a proper subject of consideration in assessing damages due as a result of a tort.
This rule was recognized in Loyacano v. Jurgens, 50 La.Ann. 441, 23 So. 717 (La. 1898) and in Daly v. Kiel, 106 La. 170, 30 So. 254 (1901) and followed in numerous cases, to mention a few: LeDoux v. So. Farm Bureau Cas. Ins. Co., 339 So.2d 966 (La.App. 3rd Cir. 1976), Carter v. Strother, 312 So.2d 672 (La.App. 2nd Cir. 1975), Territo v. Landry, 313 So.2d 309 (La.App. 1st Cir. 1975). See especially, Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir. 1977) writs denied, La., 354 So.2d 1379. The basis for such a ruling is generally concluded to be a matter of fairness so that a defendant, who has limited ability to respond in judgment, would not be confronted with such a large judgment as may destroy him financially. It is difficult to understand why such a concept has arisen in Louisiana law, because the damages allowed in tort cases are compensatory damages and not punitive damages. If damages are to be compensatory only, the damages should be fixed solely upon the consideration of the plaintiff's plight, not the defendant's financial ability to respond. Although our courts have adhered to the view of permitting evidence of limitations on ability to pay, yet they have refused to permit a plaintiff to introduce evidence to show the wealth or the ability of a defendant to pay. See Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), and the cases cited therein, writ denied La., 323 So.2d 478, with comment.
Thus, such a plaintiff as here concerned cannot complain of introduction of inability to pay, yet he is prevented from showing that the other defendant is responsible for any reasonable judgment. At the same time, between the co-defendants, the inequities of this situation seem to us to be an unnecessary burden imposed, and could result in lack of fairness to the wealthier defendant. Nevertheless, the rule of evidence relating to the defendants' inability to respond in damages is too well entrenched for an appellate court to upset it. See, e. g., Davis v. Moore, supra.
We do feel however in this case, where one defendant is relatively unable to respond, and the other co-defendant is in a much better financial condition, that the action taken by the trial judge in permitting evidence of inability to pay, together with the policy limits of that defendant's insurance company is prejudicial both to plaintiff and the co-defendant. It is our opinion that a fairer result is reached and a better application of the law is attained by the trial judge refusing to permit any evidence of ability to pay when there are multiple defendants or by refusing to permit into evidence any policy limits, where there are multiple policies involved. We refer to the case of Ashley v. Nissan Motor Corp., supra, but see writ denial. As long as the law permits evidence of limited ability to respond, no evidence of policy limits seems more consistent with the present court rulings. The alternative, disclosure of all policy limits may lead to such results as in Adams v. Ross, 300 So.2d 192 (La.App. 1974) in which the court noted that the judgment was based on the total amount of policy limits.
With these considerations in mind, we turn to the issue of the adequacy of the $35,000 judgment.
After the accident, Mrs. Barnett complained of pains in her neck, shoulder, low back and chest. She reported to a doctor several hours after the collision and has received treatment in one form or another down to the time of trial. Medical evidence is overwhelmingly preponderant that she has suffered from a herniated disc in her cervical spine and a herniated disc in her lumbar spine. Her cervical problem was *621 largely resolved by subsequent operation and course of treatment. The low back, however, has been the subject of extensive treatment and a number of operations resulting in Mrs. Barnett's inability to work with any degree of consistency. She has considerable permanent impairment of her back, and suffers considerable pain. If her present condition is completely a result of the collisions in which she was involved, it is apparent that the jury verdict is grossly inadequate.
It is not seriously contended that Mrs. Barnett is not severely handicapped or not pain free. Instead it is urged that her condition is the result of physical conditions which preexisted the accident, and which would have worsened in any event without the intervention of the trauma. The record discloses that some months prior to the collision, Mrs. Barnett had an operation on her cervical spine in which the protruding disc at the C-5, 6 interspace was excised. She had been symptom free after recovery from that operation until the accident, after the accident her complaints became severe. Her physicians were soon convinced that it was necessary to surgically repair this area and accordingly, the disc was surgically removed and a laminectomy performed. She experienced a slow and uneventful recovery from this disabling condition.
The low back area however shows a different course of events. Initially the doctors were not concerned so much with the low back as the most pressing problem was the cervical area. The low back was treated conservatively until some time after the cervical operation, and thereafter Mrs. Barnett began to experience more and severe pain in the lumbar region such that an operation became necessary to relieve her. Due to the instability of her back, the operation was not successful and several subsequent operations were attempted. At trial time, no one could say for certain that good results had been permanently achieved.
There was no medical disagreement as to Mrs. Barnett's condition, and x-rays and myelograms disclosed that Mrs. Barnett was suffering a herniated disc just above the sacrum. The problem is when and how did it occur. Although Mrs. Barnett insists that she had no problems with her back prior to the accident, except some pains experienced as a result of a pregnancy, the statements that she gave to some of the doctors relate that she did have a prior history of back pains. Although all of the doctors concluded that she did indeed suffer from disc problems after the accident, there is no such unanimity as to what caused her problems. Taken as a whole, it is apparent that the conclusion of causation rested in the main upon the history given by the patient. There is sufficient evidence in the record for the jury to have concluded that Mrs. Barnett had a pre-existing back problem and that the collision simply caused a temporary aggravation of her problems. Under such a finding, the award of $35,000 could not be set aside by this court even though it appears to be somewhat low. We have no way of knowing precisely what determination the jury made, but we do not possess the authority to substitute our opinion, however reasonable it might be, for the conclusion of the jury when ample evidence exists in the record to support that finding. We find no manifest error to justify an increase in the award.
For the reasons above assigned, the judgment is affirmed.
AFFIRMED.